UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EASTERN ASSOCIATED COAL
CORPORATION, a corporation,
<u>Plaintiff-Appellee,</u>

v.

No. 98-1047

LOCAL 781, UNITED MINE
WORKERS OF AMERICA, an
unincorporated labor association,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-96-1944-2)

Submitted: November 17, 1998

Decided: January 6, 1999

Before NIEMEYER, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Kevin F. Fagan, DISTRICT 17, UMWA, Charleston, West Virginia,
for Appellant. Steven P. McGowan, Irene P. Keeley, STEPTOE &
JOHNSON, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Local Union 781 of the United Mine Workers of America ("Union") appeals from a district court judgment order entered pursuant to a jury verdict finding the Union liable to Eastern Associated Coal Corporation ("employer") for damages resulting from an illegal work stoppage. Employer operates various coal mines and coal facilities in Boone County, West Virginia, that are known as the "Wells Complex." Employer's union employees engaged in a three-day work stoppage at the Wells Complex between October 30 and November 1, 1996. Of the 370 union employees scheduled to work on those days, one hundred eighteen worked on the first day of the stoppage, seven on the second, and 59 on the third.

Employer filed a complaint in federal district court on the first day of the stoppage, seeking injunctive and compensatory relief in the form of its fixed daily costs during the stoppage. Employer alleged that the stoppage violated provisions of the 1993 Bituminous Coal Wage Agreement requiring the parties to submit workplace disputes through grievance and arbitration procedures. The Union eventually conceded that the work stoppage was unlawful, but contested its liability for the stoppage.

Before trial, employer filed a motion in limine to exclude presentation by the Union of evidence that, on the second day of the strike, employer issued a notice pursuant to the Worker Adjustment and Retraining Notification Act ("Warn Act"), 29 U.S.C. § 2101, et seq. The statute requires all employers subject to it to give employees' representative 60 days notice where a plant or facility closure will result in layoffs for 50 or more employees. Employer's motion argued that the evidence was both irrelevant and overly prejudicial. The court eventually excluded the evidence on relevancy grounds.

2

During discovery, the Union requested employer to produce "all documents supporting a computation of any category of damages claimed, including said computation and all documents on which said computation is based." Employer responded to this request by producing a compilation of all of its damages, together with a computer printout purporting to reflect all of the hundreds of categories of damages resulting from the stoppage. All of these categories were taken from employer's Objective Cost Report ("OC327"), a report incorporated into the employer's general ledger. Due to employer's particular accounting system, the data associated with four of the categories were recorded elsewhere and thus were not reflected on the summary version of the general ledger.* The court admitted the evidence relating to the compilation of employer's damages into the record as Exhibit 11, and the source of the data, OC327, as Exhibit 10.

There was one other problem with these exhibits. The figures relating to employer's power costs in Exhibit 11 did not jibe with the source figures provided by the company for this category of damages in Exhibit 10, because Exhibit 10 reflected employer's costs when operating at full capacity, and employer realized that it would be inaccurate to use the full power costs when assessing damages for a period when its facilities were not operating at full capacity. Hence, at trial, employer's expert witness, Kent Hartsog, testified that the power costs reflected in Exhibit 11 were calculated and provided to him by employer's Engineering Department, and that the source data for this information could be found in Exhibit 13.

During Hartsog's direct examination, the Union objected to the admission of Exhibits 11 and 13, because it had not received all of the underlying source data prior to trial. The Court directed employer to provide the Union with the supporting documents and recessed in order to permit the Union to review the documents and consult with Hartsog prior to preparing its cross examination. On the next day of trial, the Union renewed its objection to the admission of the evidence.

_____

*These categories were "Combined Fund Contributions," "Group Health Insurance Retired (hourly)," "Group Health Insurance Retired (salaried)" and "Federal Provision Occupational Disease."

3

The court denied the motion for two reasons. First, during discovery, employer objected to the Union's request for all supporting documents supporting its compilation of damages as overly broad, and the Union did not respond by filing a motion to compel. Second, the court determined that it had cured any possible error by ordering production of the documents and a recess. The trial then proceeded, and the jury ultimately awarded employer damages in the amount of $166,923.

On appeal, the Union first contends that the district court erred by excluding evidence of the employer's Warn Act notice. The Union avers that this evidence was relevant to its liability under either of the two theories of liability presented to the jury: the common law agency theory of liability, and the "mass action" theory of liability. We need not address whether the evidence was relevant to the first theory of liability because the jury in this case found liability exclusively under the mass action theory.

Under the mass action theory of liability, "as long as a union is functioning as a union it must be held responsible for the mass action of its members." Consolidation Coal Co. v. Local 1702 UMWA, 709 F.2d 882, 885 (4th Cir. 1983) (quoting United States v. International Union, UMWA, 77 F.Supp. 563 (D.D.C. 1948)). Consistent with this statement of the law relating to the theory, the district court in this case instructed the jury that when members of a union act collectively as a union, then liability for their illegal acts may be imputed to their local union, even if officers of the union made attempts to urge the workers to return to work. The district court thus instructed the jury that "if you find that all or substantially all of the local union members participated in the work stoppage alleged and that such work stoppage brought production at Eastern's facilities to a halt, then you may find . . . [that] . . . the action involved by the union members was the action of the local union itself." The Union has at no point argued that this instruction erroneously characterized the law.

We review the district court's evidentiary rulings for abuse of discretion. Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378, 1383 (4th Cir. 1995). Employing this standard, we find that the district court committed no error in excluding the Warn Act evidence in this case on relevancy grounds. The evidence did not bear on whether all or virtually all of the union members participated in the work stoppage.

We also find no error in the district court's decision to permit employer's expert witness to rely on the supporting documents that

4

employer failed to provide to the Union prior to trial. Employer moved the court for a protective order under Fed. R. Civ. P. 26(c). Although the court did not rule on this order, had the Union truly desired production of the few documents employer failed to produce, it could have filed a motion to compel pursuant to Fed. R. Civ. P. 37(2)(A). More importantly, however, we think the district court properly concluded that employer's failure to fully comply with discovery in this case did not prejudice the Union.

The Union received the documents and an opportunity to review them and consult with the employer's expert prior to resumption of the trial. While the Union contends that the recess was insufficient to cure its prejudice because the brief delay afforded it no time to acquire its own expert, it fails to address how its acquisition of its own expert might have changed the outcome of the case. Significantly, the Union possessed the employer's figures reflecting the amounts of its fixed cost damages prior to trial; it lacked only a few of the supporting source documents. Moreover, even after receiving the documents and consulting with employer's expert-- indeed, even at this stage of the litigation -- the Union has never identified any reason to suspect that employer's figures are inaccurate. Therefore, because the district court acted to cure any surprise to the Union resulting from the undisclosed documents, because the Union has failed to demonstrate prejudice, and because there is no dispute that employer's failure to produce the documents in question was inadvertent, we find that the court did not abuse its discretion in permitting employer's expert witness, whose testimony was highly important to the issue of damages, to rely on the undisclosed documents to support his testimony. See Adalman v. Baker Watts & Co. , 807 F.2d 359, 369 (4th Cir. 1986) (discussing factors relevant to decision to admit or exclude expert testimony).

Accordingly, the judgment order of the district court is affirmed. We dispense with oral argument in light of our prior order granting the Union's motion to submit this case on briefs, and because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5